[Civ. No. 1566.   First Appellate District.—November 3, 1915.]

## JAMES H. HENEY, Appellant, v. SUTRO & CO., Respondent.

CONVERSION—PURCHASE AND RESALE OF STOLEN BOND—LACK OF KNOWL-
EDGE OF OWNERSHIP.—A partnership engaged in the business of buy-
ing and selling stocks and bonds is not liable in damages for the con-
version of a bond payable to bearer and transferable upon delivery
which had been lost by or stolen from its real owner, and which the
partnership had purchased and resold in the ordinary course of busi-
ness in an allotment of several thousand dollars' worth of bonds,
where it had not in mind the ownership and loss of such bond at the
time of the purchase, and the only notice it had ever received thereof
was that imparted to its cashier, who simply made a memorandum
thereof and placed it upon the desk of the bookkeeper, where it was
subsequently lost.

ID.—NEGOTIABLE PAPER—TAKING IN GOOD FAITH—KNOWLEDGE OF DE-
FECTS.—It is sufficient to constitute good faith that the holder of the
instrument had no knowledge of the defect of title at the time when
he took the paper, although he may have had notice at some previous
time.

ID.—GOOD FAITH—MEANING OF.—The phrase "in good faith" has a settled
and well-defined meaning, which generally imports that in any given
case the transaction involved was honestly conceived and consum-
mated without collusion, fraud, or knowledge of fraud, and without
intent to assist in a fraudulent or otherwise unlawful design.

ID.—ACTION FOR DAMAGES—QUANTITY OF BOND BUYING AND SELLING—
PROFIT UPON TRANSACTION—COMPETENT EVIDENCE.—In an action to
recover damages for the alleged conversion of such a bond, it is not
error to permit the defendant to show that over ten million dollars'
worth of bonds passed through its hands yearly, and that the only
profit of the defendant upon the purchase and resale of the bond in
question was five dollars.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco.   George H. Cabaniss,
Judge.

The facts are stated in the opinion of the court.

Jordan & Brann, for Appellant.

Milton B. Badt, and Philip I. Manson, for Respondent.

LENNON, P. J.—In this action the plaintiff sought damages for the alleged conversion of a bond. The case was ultimately tried by the court without a jury, and judgment was entered for the defendant, from which an appeal has been taken upon the judgment-roll and a bill of exceptions. Alleged errors of law occurring during the trial, and the claimed insufficiency of the evidence to support the findings and the judgment are the only points urged in support of the appeal.

The facts of the case as developed upon the trial and upon which the findings of the court were based, are practically undisputed and are substantially as follows: On or about October 3, 1905, bonds numbered 3868, 4471, and 4491 of the Pacific Electric Railway Company were lost or stolen from the plaintiff. On October 17, 1905, the plaintiff gave the cashier of the defendant at its place of business in the city and county of San Francisco a printed notice of the plaintiff's loss of the bonds and a warning against purchasing them. A similar notice and warning were sent to stockbrokers generally who were doing business in San Francisco. On October 20, 1905, the plaintiff called at the defendant's office and spoke to the defendant's cashier concerning his loss. On the twenty-fifth day of October of the same year the defendant in the course of its regular business purchased in an allotment of fifteen thousand dollars' worth of Pacific Electric Railway bonds, the lost bond numbered 3868 from a Los Angeles concern, and subsequently sold it in an allotment of fifty thousand dollars worth of Pacific Electric Railway bonds to a San Francisco concern. Thereafter upon five different occasions the plaintiff called at the defendant's office, and upon each of them save one (when another man in the office told him substantially the same thing) was informed by the defendant's cashier that he knew nothing and had neither heard nor seen anything of the lost bond numbered 3868. In the month of July, 1912, the plaintiff having commenced an action against the Pacific Electric Railway Company in an effort to obtain a reissue of the lost bond in question, took the deposition of the defendant's cashier, and then ascertained for the first time that said bond had been purchased and sold by the defendant. The defendant's cashier at no time prior to the taking of his deposition, had any actual knowledge that the lost bond in suit had been pur-

chased by the defendant. It was an admitted fact in the case that the lost bond was negotiable in character and that its reasonable market value was at the time of its purchase and sale by the defendant and at the time of the commencement of the action the sum of one thousand three hundred and fifty dollars. At the time that he was notified by the plaintiff of the loss of the bond the defendant's cashier was in charge of the defendant's claim department, but his duties were primarily the receiving and paying out of money. He, however, sometimes received and made deliveries of bonds, but less than one-fourth of the bonds sold by the defendant— which yearly aggregated the sum of ten million dollars— passed through his hands. When he read the notice of the plaintiff's lost bonds he made a written memorandum thereof, and placed the same upon the desk of the bookkeeper of the defendant. He did not advise any member of the partnership defendant or any employee of the defendant save the bookkeeper, of the plaintiff's loss. The defendant kept no book or record of notices of lost or stolen bonds, and the memorandum made by its cashier was lost or destroyed shortly after it came to the defendant's bookkeeper. The only profit made by the defendant in the purchase and sale of the bond in controversy was a commission of five dollars.

The plaintiff's complaint proceeded upon the theory that the defendant, with full knowledge of the plaintiff's rights in the premises, purchased the bond and subsequently sold the same with knowledge of and in willful disregard of the plaintiff's rights therein. The failure of the plaintiff to institute the action within three years from the date of the alleged conversion was attempted to be justified by allegations to the effect that the representations of the defendant's cashier made upon the several occasions subsequent to the purchase and sale of the bond in suit, were falsely made with the intent and purpose of misleading the plaintiff and concealing from him the fact that the defendant had actually purchased and sold the bond in suit: that said representations so made to the plaintiff were by him believed to be true, and actually misled and deceived him, and thereby prevented him from learning of the defendant's purchase and sale of the lost bond until on or about February 12, 1912, the date when the deposition of the defendant's cashier was taken.

The answer of the defendant, in addition to denying all the material allegations of the complaint and pleading the statute of limitations, as contained in subdivision 3 of section 338 of the Code of Civil Procedure, affirmatively averred that it had acquired the bond in suit payable to bearer in good faith in the ordinary course of business, without knowledge of the plaintiff's rights therein and for value before its maturity or dishonor.

Upon the issues thus joined the trial court made its findings of fact, declaring among other things that "the plaintiff commenced the action on the nineteenth day of June, 1912, approximately six years and eight months after defendant had purchased said bond, and approximately six years and five months after defendant had sold said bond; that defendant was guilty of no fraudulent concealment of any facts whereby or by reason whereof the plaintiff was prevented from bringing its action at an earlier date; that on the twenty-fifth day of October, 1905, defendant bought from Adams, Phillips & Co. of Los Angeles fifteen thousand dollars' worth of bonds of the Pacific Electric Railway, among which was said bond numbered 3868, being the bond stolen from the plaintiff; that said bond so purchased was purchased by defendant for full value, in good faith before the maturity thereof in the ordinary course of business; that said bond was at the time of such purchase negotiable paper, was payable to bearer and transferable by delivery; that at the time of said purchase defendant had no knowledge of any claim, right, title or interest of plaintiff in or to said bond or to the coupons thereto attached."

From these findings the court deduced the conclusions of law (1) "That the defendant in and by the purchase of said bond and coupons, became a *bona fide* holder thereof in due course, and acquired a good and perfect title thereto as against plaintiff and all the world"; (2) "That plaintiff's cause of action, if any he had, is barred by section 338 of the Code of Civil Procedure"; (3) "That the defendant is entitled to judgment against the plaintiff for costs."

Apparently it is the contention of the plaintiff that the findings and conclusions of the trial court are contrary to the evidence and the law, because the defendant's cashier had actual knowledge prior to its purchase by the defendant that the bond in suit had been lost, or stolen. In this behalf it

is argued that the knowledge of the defendant's cashier was equivalent to actual knowledge on the part of the defendant of the plaintiff's loss and ownership of the bond at the time of its purchase and sale, and that consequently the defendant cannot be rightfully held to have been a purchaser in good faith. Admittedly bad faith when shown may be invoked to defeat the rights of the holder of negotiable paper even though purchased before maturity for a valuable consideration and in the ordinary course of business; and it may be conceded that the notice given to the defendant's agent—its cashier—of the loss of the plaintiff's bond was as a matter of law notice to the defendant of the fact at the time such notice was given; but it by no means follows as a matter of law that the mere giving of such notice established the bad faith of the defendant at the time when he subsequently purchased and sold the bond in suit. As understood in law the phrase "in good faith" has a settled and well-defined meaning, which generally imports that in any given case the transaction involved was honestly conceived and consummated without collusion, fraud, or knowledge of fraud, and without intent to assist in a fraudulent or otherwise unlawful design. (*Crouch* v. *First Nat. Bank*, 156 Ill. 342, [40 N. E. 974]; *Docter* v. *Furch*, 91 Wis. 464, [65 N. W. 161].)

The fact that the defendant had at one time received notice of the plaintiff's loss was not sufficient of itself to fasten liability upon the defendant for the conversion of the bond in the presence of evidence tending to show that at the time of its purchase the defendant did not have in mind the plaintiff's ownership and loss. The failure of the defendant to keep and refer to a record of the plaintiff's loss as detailed in the notice given to the defendant's cashier, is of no consequence in determining the relative rights of the parties to the action. The defendant was under no legal obligation to encumber either its memory or the minutes of its business with a record of notices given to it of the loss of immature negotiable commercial paper (*Vermilye & Co.* v. *Adams Express Co.*, 21 Wall. 138, [22 L. Ed. 609]) and therefore, notwithstanding the notice to its cashier, the defendant may well have purchased the bond in suit in good faith, for "It is sufficient to constitute good faith that the holder has no knowledge of the defect of title at the time when he took the instrument, although he may have had notice at some

previous time.'' (Story on Promissory Notes, p. 269. Note.) The case of *Rapheal* v. *Bank of England*, 17 C. B. 161, [139 Eng. Reprint, 1030], is precisely in point in this particular with the case at bar. There a banker had purchased from a stranger one of five five-hundred pound stolen bank notes at the current rates of exchange. Previous to the purchase the loss of the notes had been advertised by printed notices, a copy of which was served upon the purchaser and by him filed away with other notices of lost or· stolen bonds that had been previously served upon him. When purchasing the note he omitted to inspect his files, and having no recollection of the notice served upon him, the court held that he was a *bona fide* holder because at the time he purchased the note he took it for value and in ignorance of the fact that it had been stolen.

Viewed in the light of the foregoing principles we have no doubt but that the evidence adduced upon the whole case justified the trial court in finding in favor of the good faith of the defendant; and of course, that being so, it follows that the same evidence justifies and supports the finding of the trial court upon the issue of the statute of limitations.

The trial court did not err in permitting the defendant to show in evidence over the objection of the plaintiff that over ten million dollars' worth of bonds passed through its hands yearly, and that the only profit of the defendant upon the purchase and sale of the bond was five dollars. The allegations of the plaintiff's complaint concerning the knowledge and concealment of the defendant's cashier were broad enough to include and raise issues of constructive and actual fraud; and therefore it was material to know whether the bond in suit had passed through the hands of the defendant's cashier, and evidence of the total quantity of bond buying and selling done by the defendant, and the proportion thereof which came to the knowledge of the defendant's cashier, was undoubtedly relevant and competent for that purpose. Moreover, such evidence in a measure tended to establish the defendant's good faith in the transaction, and was therefore admissible. The small profit which the defendant made upon the transaction was admissible in evidence as tending to show good faith, upon the theory that the defendant would not be likely to take the hazard of giving the full value for a

bond which he knew to be stolen upon such a comparatively insignificant consideration.

Our conclusion that the evidence sufficiently supports the judgment upon the issue of the good faith of the defendant requires an affirmance of the judgment, and therefore renders unnecessary a discussion and decision of the question as to whether or not the trial court upon the issue of the statute of limitations should have permitted the plaintiff to show that he was not lax in his efforts to discover the whereabouts of the lost bond.

The judgment appealed from is affirmed.

Kerrigan, J., and Richards, J., concurred.