WILSON v. BUCHENAU et al.

BANKAMERICA CREDIT CORPORATION
v. HESSE BROS. et al.

Civ. No. 87.

District Court, S. D. California, N. D.

Feb. 10, 1942.

William S. Sprague, of Los Angeles, Cal., for plaintiff.

Joseph Barcroft and David P. Barcroft, both of Madera, Cal., for defendant H. J. Buchenau.

Edmund Nelson and G. L. Berrey, both of Los Angeles, Cal., for Bankamerica Credit Corporation.

F. J. Heid, Jr. (of Russell & Heid), of Tulare, Cal., for defendant Hesse Bros., composed of Frank J. Hesse and R. E. S. Hesse.

J. F. T. O'CONNOR, District Judge.

This is a claim and delivery action.

The facts necessary to an understanding of this action are as follows:

The plaintiff, R. M. Wilson, was the owner of 222 head of cattle located on his ranch five miles from Deming, New Mexico. Eighteen of these cattle were branded "ヨW", and the balance were branded "☉".

On November 10, 1940 one Ike Ratner called at plaintiff's ranch and, after some preliminary negotiations, purchased 222 head of cattle with brands as stated. The plaintiff had never seen Ike Ratner before, nor had any business dealings with him, and had never heard of him. Ratner drew a draft on the Hampton Live Stock Commission Co., Inc., of Los Angeles in the sum of $500 as a down payment and it was agreed that the 222 head of cattle would be delivered to Ike Ratner at the stockyards in Deming on November 13, 1940. The plaintiff drove the cattle to the stockyards, had them weighed and inspected and a certificate of brand inspection was issued to Ike Ratner showing consignment to M. E. Eddleman at Tipton, California. The plaintiff did not see the certificate at the time it was given to Ratner by the brand inspector. He did see it, however, shortly after the draft given for the cattle was dishonored and returned to his bank.

Ike Ratner, on November 13, 1940, delivered to the plaintiff a draft in the sum of $7,367.94 drawn on the Hampton Live Stock Commission Co., Inc., at Los Angeles, California, and signed it, "M. E. Eddleman by Ike Ratner". The plaintiff deposited this draft on the day it was received in the Mimbres Valley Bank, Deming, New Mexico. On November 20, 1940 the draft was protested for nonpayment at Los Angeles, and returned to the plaintiff's bank of deposit. This draft was for the full amount due, and the original draft for $500 which had been given to the plaintiff by Ratner, which was never deposited, was returned to Ratner and he destroyed it.

The plaintiff received notice that the draft was dishonored on or about November 20, 1940 and on the 21st of November, 1940, M. E. Eddleman sent a telegram to the Mimbres Valley Bank, Deming, New Mexico, as follows: "Mr. Hampton says send draft back and they will be paid immediately". The plaintiff complied with this request and the draft was protested a second time on November 28, 1940. The plaintiff made no inquiries with reference to the financial standing of the Hampton Live Stock Commission Co., Inc., until after he received notice of the protest of the draft. The plaintiff knew at the time of shipment that the cattle were to be shipped out of the state of New Mexico but at that time did not know their destination. After receipt of the notice of the protested draft, the plaintiff went to the Southern Pacific Company and requested and received a copy of the contract of shipment and learned for the first time the destination of the cattle. Plaintiff then contacted Ike Ratner, who went to Los Angeles to determine why the draft was not paid. Ratner learned the cattle were in Sacramento Valley, and at the request of the plaintiff, he instructed both Eddleman and Hampton not to sell the cattle until the draft was paid.

On November 25th Ike Ratner advised plaintiff as follows: "Your cattle sold in Sacramento Valley. Trace and know where they are. Promised to pay your draft Wednesday. Answer what you decide."

This telegram was followed by another on November 27, when Ratner advised Wilson as follows: "Hampton promises pay your draft today. I have located your cattle." On December 2d Hampton Live Stock Commission Co., Inc., advised the Mimbres Valley Bank by telegram as follows: "Our representative will be there in the next day or two." And on December 4th the Hampton Company advised the Mimbres Valley Bank: "Our representative will be there tomorrow or next day."

On or about the 5th or 6th of December, 1940, an attorney for the Hampton Live Stock Commission Co., Inc., went to Deming, New Mexico, and the plaintiff learned from him that the draft might not be paid for two or three weeks.

On or about December 16, 1940 the plaintiff arrived in Los Angeles and learned that the cattle had been diverted from their original destination of Tipton, California, to Traver, California. Plaintiff went to

Tipton, California, on or about December 16th or 18th and learned that Buchenau had the cattle, but made no effort to find Buchenau. The first time plaintiff saw defendant Buchenau was on January 2, 1941 and recognized the live stock in question in this action in Buchenau's pasture. He learned that the cattle had been on pasture at the Hesse Bros. ranch but had been moved therefrom on or about December 10, 1940 to the ranch of defendant H. J. Buchenau near Madera, California. The shipping documents, including the shipping contract, consigning the cattle to M. E. Eddleman; the brand certificate and health certificate, were all issued in New Mexico and forwarded to Eddleman by Ratner in care of Hampton Live Stock Commission Co., Inc., in Los Angeles where they were placed in the files of the company. Eddleman did not see the documents nor make any attempt to obtain them until about a month before the trial. No bill of sale describing these cattle was given by the plaintiff to anyone. The cattle came into the possession of Hesse Bros. on or about December 7, 1940 and were sold by them to defendant Buchenau who gave in payment therefor a draft drawn on the defendant, Bankamerica Credit Corporation. Hesse Bros. gave a bill of sale to the Bankamerica Credit Corporation and delivered a brand inspection certificate to defendant, Buchenau, at the time, which brand inspection certificate showed inspection of the cattle in question. No attempt was made by either Hesse Bros. or Buchenau to check the title to the cattle or to check the brands against the brands contained in the brands certificate book. The plaintiff's brands were registered in the state of New Mexico. The cattle had a value of $7,367.94 at Deming, New Mexico, and a value of $11,487.50 at Madera, California, at the time of plaintiff's demand, which was on or about December 30, 1940, by plaintiff's attorney; and demand was again made on or about January 7, 1941 by the plaintiff personally. Both demands were made on defendant Buchenau, and both were refused.

Hesse Bros. paid the Hampton Live Stock Commission Co., Inc., honoring drafts dated as follows:

(1) Nov. 25, 1940, $5,000 payable to the order of Hampton Live Stock Commission Co., Inc., drawn by Hampton Live Stock Commission Co., Inc., by M. R. Hampton.

(2) Nov. 13, 1940, $1,443.39 payable to the order of Hampton Live Stock Commission Co., Inc., drawn by M. E. Eddleman.

(3) Dec. 3, 1940, $3291.01 payable to Southern Pacific Co. drawn by M. E. Eddleman, and

(4) Dec. 6, 1940, $5,002.30 payable to the order of Ben Zitnick, drawn by M. E. Eddleman.

The evidence shows that other cattle were purchased at the same time by Hesse Bros. from Hampton Live Stock Commission Co., Inc.

On July 29, 1941 M. E. Eddleman wrote to the plaintiff and, among other things, said: "I am writing you in connection with the lawsuit you have filed against Mr. Buchenau and Mr. Hesse concerning cattle purchased from you for my account by Ike Ratner last November. * * * I want you to understand that these cattle were definitely paid for in full by Mr. Hesse and me, the money going to the Hampton Live Stock Commission Co. Inc. without either of us having any knowledge that Hampton was not paying the drafts."

It is difficult to understand this statement, in view of the telegram sent by M. E. Eddleman to the Mimbres Valley Bank on November 21st advising—"Mr. Hampton says send draft back and they will be paid immediately." Ratner testified that two weeks after the delivery of the cattle in New Mexico he advised Eddleman that Wilson had not received his money.

It is not clear why the draft for $5,002.30 which was drawn by Eddleman was made payable to Ben Zitnick and not to the Hampton Company.

The plaintiff contends that the law of New Mexico where the contract was made should apply, and not the law of California. The Uniform Sales Act has not been adopted by the state of New Mexico, but has been adopted by the state of California. California Civil Code, Sec. 1800. The state of New Mexico has several statutes pertaining to bills of sale. New Mexico Statutes Annotated, 1929 Compilation, § 4-317, provides that a written bill of sale shall accompany actual delivery of horses, mules, asses, cattle, containing the number, kind, marks and brand of each animal, and shall be signed and acknowledged by the party giving the same; and provides that upon the trial of a person accused of theft, the absence of such document shall be prima facie evidence against the accused. (L. '95, Ch. 6, § 15; C.L. '97, § 119; Code '15, § 43.) Sec. 4-318 requires the exhibition of such bill of sale under certain circumstances and provides

a penalty for failure to do so. (L. '84, Ch. 47, § 13; C.L. '97, § 77; Code '15, § 44.) Sec. 4-321 provides for certain information in the bill of sale when the animals sold are branded or marked "with any brand or mark not the recorded brand or mark of the * * * firm, or corporation so selling, transferring or delivering * * *". (L. '21, Ch. 159, § 1.) Sec. 4-322 provides for a penalty for violation of the last-mentioned statute. Sec. 4-1403 provides for the recording of brands of certain animals allowed to range at large. (L. '95, Ch. 6, § 1, C.L. '97, § 106; Code '15, § 117). Sec. 4-1404 provides for the evidentiary value of such recorded brands (L. '95, Ch. 6, § 2; C.L. '97, § 107; Code '15, § 118.)

A reading of the Statutes of New Mexico just cited shows that a sale of cattle is not rendered void by the absence of the statutory execution and delivery of a bill of sale in the state of New Mexico.

Counsel for plaintiff concedes that there are no cases in the courts of New Mexico holding that a sale made without the execution and delivery of a bill of sale is void. Therefore, the most favorable construction to the plaintiff would be a voidable title.

It was necessary to determine at the outset of this opinion whether we had a void or a voidable title in the buyer of the cattle.

In order to decide other issues in the case it is necessary to determine whether the law of New Mexico or the law of California applies. This question has been decided by the Supreme Court of the United States. Our highest court has held in several decisions that in diversity of citizenship cases, the Federal Courts, when deciding a question, of conflict of laws, must follow the rules prevailing in the states in which they sit. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. In two recent decisions the Supreme Court has ruled thus. In an opinion written by Justice Reed, it was decided that the Federal Court sitting in Delaware passing on the breach of a New York contract was bound by the laws of the state of Delaware and not the laws of the state of New York, which provided for the addition of interest to a judgment. The Court held that the full faith and credit clause of the Constitution did not require that a state, contrary to its own policy, should give effect to contracts made in other states under the laws of those states relating not to the validity of such contracts but to the right to add interest to the recovery as an incidental of damages. Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, decided June 2, 1941.

Again the Supreme Court, on the same day, affirmed, in another opinion, In re Griffin, Administrator, v. McCoach, Trustee, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462, the opinion in the Klaxon case, and held that a state could constitutionally decline to enforce in its courts as contrary to its policy, a contract insuring the lives of its citizens in favor of beneficiaries in another state, and held such contract would be valid where made. The Court held that such rule or policy binds the Federal Court exercising diverse citizenship jurisdiction in the state adopting it.

It is clear, therefore, from a reading of these opinions, that the law of the state of California applies to the issues raised in this action, and not the laws of the state of New Mexico.

The plaintiff strenuously contends that because the draft drawn on the Hampton Company for $7,367.90 dated November 13, 1940 signed "M. E. Eddleman by Ike Ratner" and payable to the order of R. M. Wilson was dishonored, no title to the 222 cattle passed to the buyer. The draft was not immediately payable, but by its terms provided as follows: "1 to 3 days sight draft", and by its terms provided for its acceptance in Los Angeles.

A draft has been defined as an open letter of request from, and an order by, one person on another to pay a sum of money therein mentioned to a third person on demand or at a future time therein specified. The term is a common one for a bill of exchange. The term "draft", as used in a statute, is sometimes held broad enough to cover checks. 10 C.J.S., Bills and Notes, § 6, page 412. The two chief characteristics of checks are that they are drawn on a bank and that they are payable instantly on demand. McDonald v. Stokey, 1 Mont. 388. A check differs from a bill of exchange in that it is always drawn on a deposit, while a bill is not. Espy v. Bank of Cincinnati, 18 Wall 604, 21 L.Ed. 947. There is a conflict

of authority as to whether an instrument payable on a date subsequent to its date can be held to be a check. The weight of authority holds that an instrument in the form of a check which is payable on a future date is a bill of exchange, especially where it is in the formal language of a bill. Merchants' Bank v. Woodruff, 6 Hill 174; Woodruff v. Merchants' Bank, 25 Wend. 673. See 10 C.J.S., Bills and Notes, § 5, page 411.

The Negotiable Instruments Act, Civ. Code Cal. § 3265, defines a check as a bill of exchange drawn on a bank payable on demand.

The Southern Pacific Company issued its uniform live stock contract, which is the form now in general use instead of the uniform bill of lading. Ike Ratner was designated as the shipper and M. E. Eddleman as the consignee, Tipton, California. There were several distinct sales of these particular cattle: the sale by Wilson, the sale by Hampton Company or Eddleman, the sale by Hesse Bros., and the sale to the Bankamerica Credit Corporation, and the sale to Buchenau. The Bankamerica Credit Corporation advanced the funds to Buchenau and was a lien holder at the time of the trial.

Assuming that Eddleman had notice of the failure of Hampton to pay for the cattle, the most that can be said is that he had a voidable title. "Where the seller of goods has a voidable title thereto, but his title has not been avoided at the time of the sale, the buyer acquires a good title to the goods, provided he buys them in good faith, for value, and without notice of the seller's defect of title". Sec. 1744, Civil Code of California. There was no reservation of title or lien claimed by the plaintiff in the uniform live stock contract and the fact was that such contract was made between Ratner and Eddleman and the name of the plaintiff in no way appeared thereon. A document of title in which it is stated that the goods referred to therein will be delivered to the bearer or to the order of any person named in such document is a negotiable document of title. Sec. 1747, Civil Code of California. A negotiable document of title may be negotiated by delivery; (a) where by the terms of the document the carrier, warehouseman or other bailee issuing same undertakes to deliver goods to bearer, and (b) where by the terms of the document the carrier, warehouseman or other bailee issuing the same undertakes to deliver the goods to the order of a specified person, and such person or a subsequent indorsee of the document has indorsed it in blank or to the bearer.

The uniform live stock contract had printed in large type: "Duplicate Original Not Negotiable". "If a document of title which contains an undertaking by a carrier, warehouseman or other bailee to deliver the goods to the bearer, to a specified person or order, or to the order of a specified person, or which contains words of like import, has placed upon it the words 'not negotiable,' 'non-negotiable' or the like, such a document may nevertheless be negotiated by the holder and is a negotiable document of title within the meaning of this act. But nothing in this act contained shall be construed as limiting or defining the effect upon the obligations of the carrier, warehouseman, or other bailee issuing a document of title or placing thereon the words 'not negotiable,' 'non-negotiable', or the like. (Added by Stats.1931, p. 2244.)" Civil Code of California (1937), § 1750, page 418.

The evidence shows that a uniform live stock contract was delivered to Ratner and by him sent to the Hampton Company.

"A negotiable document may be negotiated by any person in possession of the same, however such possession may have been acquired, if by the terms of the document the bailee issuing it undertakes to deliver the goods to the order of such person, or if at the time of negotiation the document is in such form that it may be negotiated by delivery. (Added by Stats. 1931, p. 2244.)" Sec. 1752, Calif.Civil Code.

Ratner, in billing the cattle directly to Eddleman, was acting for and on behalf of the Hampton Company, the company ratifying his act in purchasing the cattle by later agreeing to pay for the same. The Hampton Company had three days in which to accept the draft and make payment of same. Section 1762, Civil Code of California. It is possible that Eddleman had only a voidable title but under the Uniform Sales Act he could give good title to a purchaser in good faith for value. Sec. 1753, Civil Code of California.

For intention see also Section 1739, Rule 4; and Section 1740 and Section 1766.

The evidence discloses that the purchasers of the cattle in California fully

complied with the marks and brands acts of California. Act 4637 approved Apr. 16, 1917, Statutes of 1917, page 138, in effect July 27, 1917, and Act 4638 approved June 3, 1921, Statutes of 1921, page 1248 in effect August 2, 1921. II General Laws 1931, pages 2206, 2207. This act was held constitutional in Galeppi v. C. Swanston & Son, 107 Cal.App. 30, 290 P. 116. There is nothing in these statutes of California which declares that the records of the brands in a foreign state shall be constructive notice of ownership in California. The record shows the brand of plaintiff was not registered in California and there was no duty upon the purchasers of cattle in California to determine the validity of transactions involving cattle with foreign brands and such failure is not evidence of bad faith. "A thing is done 'in good faith' within the meaning of this act when it is in fact done honestly, whether it be done negligently or not." Civil Code of California, Sec. 1796, Subdivision 2. Uniform Sales Act, Sec. 76, Subdivision 2; Heney v. Sutro & Co., 28 Cal.App. 698, 153 P. 972.

The evidence shows that Ratner invited plaintiff to come to Los Angeles with him and make an investigation, but his reply was that he was too busy. The original transaction took place on November 13, 1940 and more than 30 days elapsed before the plaintiff made his personal investigation in California. No doubt the telegrams referred to in this opinion would account for a few days delay if, as contended by plaintiff, the transaction was one for cash. It was the duty of the plaintiff to act immediately upon notification that the draft had been dishonored; and not to extend additional time for payment as was impliedly done by the plaintiff; to be consistent with the theory of a cash transaction. The intention of the parties must be gathered from their words, actions and conduct, and the statutory definitions of intention must be applied. The plaintiff, Wilson, did not make immediate demand for the return of his cattle after he was advised that the draft had been dishonored. He relied upon the promises of the Hampton Company to pay at a future date. During this period of approximately 30 days, the cattle passed into the hands of several purchasers in good faith for value. Prompt action on the part of plaintiff would have prevented his loss and the proceeds of the sale could

have been recovered. "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer". Sec. 3543, Civil Code of California (1937), page 730. See, also, 10 Cal.Jur. 506; 5 Cal.Jur. 10 yr. supp. 499; 21 C.J. 1176, Sec. 180.

Judgment will be entered against the plaintiff and in favor of each of the defendants. Findings will be prepared in accordance with this opinion.