

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-17-2006

# In Re: Cendant Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3352

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"In Re: Cendant Corp " (2006). *2006 Decisions.* Paper 1098.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1098

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Case No. 04-3352

———————

IN RE: CENDANT CORPORATION
SECURITIES LITIGATION

Eileen McLaughlin,
*Appellant*

On Appeal from the United States District Court
for the District of New Jersey
(No. 98-cv-01664)
District Court Judge: Hon. William H. Walls

———————————

Argued March 9, 2006
Before: AMBRO and BECKER, *Circuit Judges*, and STAGG,* *District Judge*

(Filed May 17, 2006)

Brain L. Wamsley, Esq. (ARGUED)
Goodwin Procter
599 Lexington Avenue
New York, NY 10022
*Attorney for Appellant*

Samuel Kadet (ARGUED)
Skadden, Arps, Slate, Meagher & Flom
Four Times Square
New York, NY 10036

————————————

* Hon. Tom Stagg, Senior District Judge, sitting by designation.

Burton H. Finkelstein
Finkelstein, Thompson & Loughran
1050 30th Street, NW
Washington, DC 20007
*Attorneys for Appellee*

———————————————

OPINION OF THE COURT
———————————————

BECKER, *Circuit Judge*

Eileen McLaughlin appeals from a district court order dismissing her claims against Cendant Corporation for breach of contract and breach of the implied duty of good faith and fair dealing. We will affirm.

Because we write mainly for the parties, we provide only a brief synopsis of the facts and procedural history. While working at Cendant, McLaughlin earned the right to buy company stock at a fixed price upon her departure. The rules governing these options were set forth in two plans, the Option Plan and the Bonus Plan. Under those documents, McLaughlin's resignation triggered a four-month deadline in which to exercise her options. In the meantime, however, Cendant learned of problems with its accounting practices and retracted its financial statements from the SEC. The company further determined that federal law did not allow it to issue additional stock until it had filed new financials. Accordingly, Cendant imposed a temporary blackout on the exercise of employee stock options and informed McLaughlin that it would not release shares of stock in response to her exercise request.

When the blackout was lifted, McLaughlin was allowed to exercise her options

2

for as many days as she lost in the blackout period. McLaughlin took advantage of this opportunity, but she earned substantially less than she would have if she had been able to acquire and sell her stock during the blackout.

McLaughlin brought suit against Cendant and several of its officers and directors, alleging, *inter alia*, breach of contract and breach of the implied duty of good faith and fair dealing. The District Court granted Cendant's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), and this appeal followed.

The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1332 and 1367 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa. This Court has appellate jurisdiction under 28 U.S.C. § 1291.[1] Our review of the District Court's entry of

---

[1] We reject Cendant's claim that appellate jurisdiction is lacking because the District Court failed to certify its order pursuant to Federal Rule of Civil Procedure 54(b). When a case involves multiple parties, an order dismissing claims against just one party is ordinarily deemed "final," and hence appealable, "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." *See* Fed. R. Civ. P. 54(b). As Cendant points out, the order dismissing McLaughlin's claims did not resolve claims between Ernst & Young (E&Y) and Cendant, even though the latter claims were filed in an action that was consolidated with McLaughlin's suit "for all purposes." In *United States v. $8,221,877.16 in United States Currency*, 330 F.3d 141 (3d Cir. 2003), however, we held that a district court's order may, in limited circumstances, be treated as final even though it was not certified in accordance with Rule 54(b). This is such a case. As in *$8,221,877.16 in United States Currency*, several factors suggest that the District Court's failure to make the requisite certification does not render its order ineffectual. First, McLaughlin's breach of contract and implied duty claims have nothing to do with the merits of Cendant's dispute with E&Y. Second, McLaughlin's interests are not recognizably aligned with E&Y's. And third, the two actions here "have been treated separately from the start." *See id.* at 148. Under these circumstances, we are not precluded from treating the District Court's order as final, and thus reach the merits of McLaughlin's claims.

judgment on the pleadings is plenary. *See Mele v. Fed. Reserve Bank of New York*, 359 F.3d 251, 253 (3d Cir. 2004).

McLaughlin's appeal requires us to decide two questions: whether the District Court erred in dismissing McLaughlin's breach of contract claim, and whether the District Court erred in dismissing McLaughlin's claim that Cendant breached an implied duty of good faith and fair dealing. We consider each issue in turn.

## I.

McLaughlin argues that Cendant breached its contract with her in two ways: first, by not allowing her to exercise her options during the blackout period; and second, by extending the exercise term once the blackout period ended. Neither argument is persuasive.

Section 7 of the Option Plan provides:

> Certificates representing the shares purchased shall be issued as promptly as practicable, provided that the Company may postpone issuing certificates for such shares for such time as the Company, in its sole discretion, may deem necessary or desirable in order to enable it to comply with any requirements of the Securities Act of 1933, as amended ("Securities Act"), the 1934 Act, [or] any Rules or Regulations of the Securities and Exchange Commission promulgated under either of the foregoing acts.

Similarly, Section 3 of the Option Plan provides: "Subject to the provisions of the Plan, the Committee shall have the authority, in its sole discretion, ... to restrict the sale or other disposition of the shares of Common Stock acquired upon the exercise of an option and to waive any such restriction."

4

McLaughlin argues that the provisions excerpted above do not permit the company to bar a former employee from exercising duly acquired options.  Instead, she insists, they only authorize the company to "postpone issuing certificates" and to "restrict the sale or other disposition" of Cendant stock obtained upon the exercise of an option, once that option has been exercised.

This argument is without merit.  What Cendant did is not only practically indistinguishable from what it was unequivocally authorized to do; it was also, to the extent that it was different in form from what the plan prescribed, better for McLaughlin than the alternative (taking McLaughlin's money but not giving her the shares).  In these circumstances, we cannot say that Cendant committed a breach in any meaningful sense of that term.  This conclusion draws added strength from the problematic nature of McLaughlin's alternative construction, which would have required  Cendant to violate federal law in order to comply with the terms of the plan. *Cf. Fields v. Thompson Printing Co.*, 363 F.3d 259, 268 (3d Cir. 2004) ("It is axiomatic that a court may refuse to enforce a contract that violates public policy.") (citing *W.R. Grace & Co. v. Local 759*, 461 U.S. 757, 766 (1983)).

Nor can we agree that Cendant breached the agreement by extending the period in which McLaughlin was allowed to exercise her options.  McLaughlin contends that the post-blackout extension violated the following provision:

> Any optionee whose employment with the Company (and its
> Subsidiaries) has terminated for any reason other than death or
> permanent and total disability ... may exercise his option, to the extent

5

exercisable on the date of such termination, at any time within four months after the date of termination, but in no event after the expiration of the term of the option.

Several considerations suggest that the company did not run afoul of this provision by extending McLaughlin's exercise period so as to compensate her for days lost during the blackout. First, like any text, contract language cannot be construed in a vacuum. In the circumstances of this case, the "term" of the option did not expire four months after the date of termination of employment, because the four-month period was interrupted by the company's blackout. Hence, the latter part of McLaughlin's exercise period is most reasonably regarded as part of the modified option term. Second, the modification was not just beneficial to McLaughlin and reasonable under the circumstances; it was also a proper exercise of the Compensation Committee's power "to make all other determinations necessary or advisable for administering the Plan."

Finally, we note that McLaughlin's contract claims would fail even if we were to hold that the company did breach the agreement. Under Delaware law, proof of damages is one element of a breach of contract claim. *See, e.g.*, *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003). The aim of awarding damages for a breach of contract is "to return the party damaged to the position that party would have been in had the breach not occurred." *Mantyla v. Wilson*, No. 2001-12-193, 2004 WL 326927, at *3 (Del. Com. Pl. Jan. 21, 2004) (citing *Delaware Limousine Serv. v. Royal Limousine Serv.*, No. 87C-FE-104, 1991 WL 53449 (Del. Super. April 5, 1991)). On

6

the facts of this case, it is plain that the company, if it had thought itself bound to let McLaughlin exercise her options, would have prevented her, for the same length of time, from selling the stocks she acquired. Similarly, McLaughlin was not harmed in the least by the company's allegedly unauthorized decision to extend her exercise period after lifting the blackout. Because McLaughlin, absent the two alleged breaches to which she points, would have been in exactly the same position as she is in now, she is unable to prove damages under Delaware law.

In sum, Cendant did not breach its contract with McLaughlin and, even if it did, McLaughlin did not suffer any damages. Accordingly, McLaughlin's contract claims were properly dismissed.

## II.

McLaughlin next claims that Cendant breached its implied duty of good faith and fair dealing. We disagree.

The relevant law is set forth in *Frontier Oil Corp. v. Holly Corp.*, No. 20502, 2005 WL 1039027 (Del. Ch. Apr. 29, 2005):

> The covenant of good faith and fair dealing, implied in every Delaware contract, arises from "fundamental notions of fairness." It "is a judicial convention designed to protect the spirit of an agreement when, without violating an express term of the agreement, one side uses oppressive or underhanded tactics to deny the other side the fruits of the parties' bargain." The Court, of course, may not substitute its notions of fairness for the terms of the agreement reached by the parties. Indeed, the implied covenant may only be invoked where it is "*clear* from what was expressly agreed upon that the parties who negotiated the express terms of the contract would have agreed to proscribe the act later complained of as a breach of [their agreement] had they thought to negotiate with

7

respect to that matter."  "[W]here the subject at issue is expressly covered by the contract, ... the implied duty to perform in good faith does not come into play."  Finally, imposing an obligation on a contracting party through the covenant of good faith and fair dealing "is a cautious enterprise" and instances "should be rare."

*Id.* at \*28 (internal citations omitted) (alterations in original).

Applying these principles to the facts of our case, McLaughlin's claim fails for several reasons.  First, McLaughlin does not point to any allegedly "oppressive or underhanded tactics" employed by Cendant to thwart the spirit of the agreement.  Indeed, as noted above, Cendant's course of action was indistinguishable from, and better for McLaughlin than, conduct that was expressly contemplated by the plan.

Second, it is by no means "clear from what was expressly agreed upon that the parties who negotiated the express terms of the contract would have agreed to proscribe the act later complained of as a breach of [their agreement] had they thought to negotiate with respect to that matter." As noted above, in these circumstances the contract expressly allowed Cendant to withhold stock certificates, to restrict sales of shares, or to do both.  Hence, it cannot be "clear" that the parties, if apprised of the facts at hand, would have prevented Cendant from doing essentially the same thing under a different name.

Third, the "subject at issue is expressly covered by the contract."  The subject here is whether Cendant could block the exercise of employee options to ensure compliance with federal rules while the company was refiling its financials.  The plan here explicitly provided for such blocking as may be needed "to enable it to comply

8

with any requirements of the Securities Act of 1933, as amended ("Securities Act"), the 1934 Act, [or] any Rules or Regulations of the Securities and Exchange Commission promulgated under either of the foregoing acts." *See Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441-442 (Del. 2005) ("Existing contract terms control, ... such that implied good faith cannot be used to circumvent the parties' bargain, or to create a 'free-floating duty ... unattached to the underlying legal document.' Thus, one generally cannot base a claim for breach of the implied covenant on conduct authorized by the terms of the agreement.") (citations omitted) (second alteration in original).[2]

## III.

For the reasons stated above, we will affirm the judgment entered by the District Court.

---

[2] McLaughlin relies on *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund*, 624 A.2d 1199, 1208-1209 (Del. 1993), for the proposition that "a fairly pleaded claim of good faith/bad faith raises essentially a question of fact which generally cannot be resolved on the pleadings or without first granting an adequate opportunity for discovery." We think that *Desert Equities* is distinguishable from our case for two reasons. First, as noted above, in our case the implied duty to perform in good faith does not even come into play, because "the subject at issue is expressly covered by the contract." *See Frontier Oil Corp.*, 2005 WL 1039027, at *28. Second, although *Desert Equities* imposes a low bar for surviving a motion for judgment on the pleadings, the plaintiff in that case made plausible, albeit general, allegations of bad faith. *See Desert Equities, Inc.*, 624 A.2d at 1202 (noting allegation that the defendant excluded plaintiff from certain investments in retaliation for filing previous suit). In our view, McLaughlin does not even allege facts which, taken as true, are sufficient to establish a breach of Cendant's implied duty of good faith.