**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| KENNETH & CLASINA DREISBACH | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| v. | ) | **C.A. No. N12C-09-121 MJB** |
| | ) | |
| **ROBERT T. &** | ) | |
| **MARTINA L. WALTON** | ) | |
| | ) | |
| **Defendants** | ) | |

Submitted: May 30, 2014
Decided: August 29, 2014

**DECISION AFTER TRIAL**

Donald L. Gouge, Esquire, Donald L. Gouge, Jr., LLC, 800 King Street, Suite 303, P.O. Box 1674, Wilmington, Delaware 19899, *Attorneys for Plaintiffs*.

Bayard J. Snyder, Esquire, Snyder & Associates, P.A. Attorneys at Law, 3801 Kennett Pike Suite 201, Building C, Wilmington, Delaware 19807, *Attorney for Defendants*.

**BRADY, J.**

# I. INTRODUCTION

This case arises from a sale of real estate. On or about November 11, 2009, Kenneth and Clasina Dreisbach ("Plaintiffs") bought 202 W. Longspur, Wilmington, Delaware ("the Property") from Robert and Martina Walton ("Defendants"). After the sale, Plaintiffs discovered that several answers on the Seller's Disclosure ("Disclosure") were incorrect, and the home required reconstruction, specifically in the basement. Plaintiffs filed suit alleging breach of contract, fraud and misrepresentation, negligent fraud, and violation of the covenant of good faith and fair dealing. A bench trial was held, beginning on April 14, 2014. Post-trial submissions were filed on May 30, 2014. This is the Court's decision.

# II. FACTS

Defendants purchased the Property in 1999 from the original builder, who had rented the home previously.[1] In 2003, Defendants decided to finish their basement to add a fourth bedroom and a full bathroom. They hired Matthew Hedden ("Hedden"), who had been referred to them by a family friend.[2] Hedden provided Defendants with a business card stating he was an electrician and a general contractor.[3] Hedden was, in fact, a licensed master electrician in Delaware and owned Matthew Hedden & Sons, Inc., which had been incorporated since April 1, 1999.[4] However, Hedden was not a licensed contractor in New Castle County ("NCC"), and Hedden did not acquire the necessary permits for Defendants' home improvements.[5] Before completing the finishing touches in the basement, Defendants and Hedden had a disagreement

---

[1] Trial Transcript ("TT") at 89:9-20.
[2] TT at 92:11-17; 93:15-17.
[3] TT at 101:10-11.
[4] TT at 46:12-13; 22-23.
[5] TT at 32:19-20; 34:12-13.

with regard to the stairwell.[6]  Hedden "took exception to what [Mrs. Walton] wanted[,] and he walked . . . and never came back."[7]

In 2005, Defendants' son-in-law discovered some possible mold near the soffit, when he came over to put insulation in the attic.[8]  Defendants hired Lane Roofing, Inc. ("Lane Roofing") to inspect their roof.  Because other neighbors were replacing their roofs, Defendants wanted to determine whether they should as well.[9]  During the inspection, signs of water leakage were discovered around the attic and chimney.[10]  Lane Roofing removed, replaced, and repaired the area.[11]

In 2009, Plaintiffs began house hunting. Plaintiffs hired Lauri Brockson ("Brockson") as their real estate agent[12] and Bryan Murray, Esquire ("Murray") as their real estate attorney.[13] Plaintiffs found a home for sale in Newark, Delaware.  After their offer on the Newark home was accepted, the Plaintiffs went to New Castle County offices to investigate the house. [14]  They found that a portion of the land lay in a flood zone and the deck was not up to code.[15] Dissatisfied with those circumstances, Plaintiffs asked to be, and were, released from the contract.[16]  They renewed their search and found the subject Property.  Plaintiffs hired an inspector and learned that the roof needed repairs.[17]  Neither the home inspector nor Murray notified Plaintiffs of any permit issues with the house.[18]  Mr. Dreisbach did not ask Murray whether he had checked permits, because he "thought everything was fine" and he "trusted the

---

[6] TT at 98:9-13.
[7] TT at 98:9-13.
[8] TT at 108: 22-23, 109: 1-4.
[9] TT at 123:8-13.
[10] Joint Trial Exhibit ("JTE") 13.
[11] TT at 125:8-23.
[12] TT at 52:16.
[13] TT at 80:14-17.
[14] TT at 53:3-7; 63:14-17.
[15] TT at 63:14-17; 53:15-21.
[16] TT at 53: 3-7.
[17] TT at 77:16-18.
[18] TT at 78: 1-3, 81:13-18.

realtor, the inspectors, and Mr. Murray."[19] Plaintiffs did not go to the County offices as they had with the home in Newark, because they "really wanted the property" and acknowledged they knew the home needed some work.[20]

Mrs. Walton's real estate agent gave her the Seller's Disclosure form to fill out. She answered several questions incorrectly.[21] She represented there were no violations of NCC code on the property,[22] and that permits for structural changes to the home had been appropriately taken out.[23] As to whether there were any past leaks, Mrs. Walton answered "no."[24] The question about roof repairs was left blank.[25] Mrs. Walton answered "no" to the question of whether there were any plumbing additions and "na" for whether a licensed contractor was used for any such plumbing additions. Those answers were also incorrect.[26] Further, Mrs. Walton incorrectly reported that the electrical work was performed by a licensed contractor,[27] and that all permits associated with any work done were appropriately acquired.[28]

On November 11, 2009, both parties reached an agreement for the sale of the property. Defendants reduced the price by $8,500, because of issues with the roof.[29] A standard Delaware Agreement of Sale for Delaware Residential Property form was executed, which included the aforementioned Disclosure, and the sale was consummated.

---

[19] TT at 81: 13-17.
[20] TT at 79:13-17.
[21] TT at 99:5-11.
[22] Joint Trial Exhibit ("JTE") 9.
[23] *Id.*
[24] *Id.* at 65.
[25] *Id.*
[26] *Id.*
[27] *Id.* at 66.
[28] *Id.*
[29] TT at 56:20-22; 83:19-84:4.

In 2010, Plaintiffs received their first tax statement for the Property, which listed the structure as having 3 bedrooms and 2.1 bathrooms.[30] Because that description did not comport with the structure, Plaintiffs went to the NCC offices and discovered that the permits required for the basement had never been issued, and that the basement was not in compliance with the NCC code. Plaintiffs hired Tricon Construction ("Tricon") to remedy the situation.[31] In three phases, Tricon removed the work that Hedden had performed and reconstructed the finished basement to meet NCC code.[32] The cost of phase 1 was $4,202.50, phase 2 was $4,790.50, and phase 3 was $15,538.50.[33] Plaintiffs filed suit for breach of contract, fraud and misrepresentation, negligent fraud, and breach of the implied covenant of good faith and fair dealing.

In addition to claims related to the lack of permits and the use of a licensed contractor for the basement, Plaintiffs alleged that Defendants failed to disclose that: (1) they rented the property, (2) they filed an insurance claim from that address in March of 2008, and (3) there was damage to the roof. Plaintiffs alleged the Property was rented after receiving mail for multiple people and neighbors had said the home was previously rented.[34] Defendants testified that it was the original builder and previous owner who had rented the property.[35] Plaintiffs alleged an insurance claim on the Property was not reported after having heard from an insurance company that there was a claim for an unknown reason in March of 2008.[36] Mrs. Walton testified during trial that the claim was for an étagère that broke and was unrelated to the Property itself.[37] At the end of trial, Plaintiffs withdrew their claim for damages for failing to disclose issues with the

---

[30] TT at 67:4-10.
[31] TT at 67:21-22.
[32] TT at 8-11.
[33] JTE 18 at 330, 335, and 332; TT at 137:21-138:1.
[34] TT at 83:4-10.
[35] TT at 89:21-90:1.
[36] TT at 82:11-23.
[37] TT at 101:15-102:11.

roof, since there was a reduction of $8,500, when the Property was purchased.[38] The Court, therefore, resolves these three issues in favor of Defendants.

Plaintiffs concede that some of the work performed by Tricon was not required to correct the deficiencies but was additional work. They do not seek compensation for these services, including: $775 for the cost of additional electrical work and $2,800 for the cost of the carpet.[39] Ultimately, Plaintiffs sought $20,956.50 in damages.[40]

### III. DISCUSSION

The Court finds that Plaintiffs failed to prove, by a preponderance of the evidence, that the 2008 insurance claim was related to the subject Property. The Court also finds that Plaintiffs failed to prove, by a preponderance of the evidence, that the Property was rented during Defendants' ownership. Further, the Plaintiffs withdrew their claims related to the roof. Therefore, the issues surrounding the basement are all that remain to be addressed.

**A. Breach of Contract**

Delaware law requires that "a seller transferring residential real property shall disclose, in writing, to the buyer . . . all material defects of that property that are known at the time the property is offered for sale or that are known prior to the time of final settlement."[41] The "disclosure form is a good faith effort by the seller to make the disclosures required by this subchapter, and is not a warranty of any kind . . . and is not a substitute for any inspections or warranties that the seller or buyer may wish to obtain."[42] The Disclosure "serves as a good faith

---

[38] TT at 137:1-11.
[39] TT at 138:2-6.
[40] TT at 138:7-9.
[41] 6 *Del. C.* §2572(a).
[42] 6 *Del. C.* § 2574.

effort by the seller to comply with the Buyer Property Protection Act's requirements."[43] Once the Disclosure is signed by both buyer and seller, it becomes part of the purchase agreement.[44] Failing to disclose material defects has been treated as a breach of contract in Delaware.[45] Delaware courts have found material defects in cases including a broken ceiling fan;[46] water seepage through basement walls causing a visually detectable "bulge" behind the wall;[47] and staining, mold, and flooring damage due to a water leak.[48] At least one Delaware court has also suggested that unlicensed construction work could qualify as a material defect that the seller must disclose, provided that the seller knew or should have know that the work was unlicensed.[49]

Breach of contract requires: (1) a contract, (2), the breach of an obligation imposed by the contract, and (3) harm resulting from the breach.[50]

Both parties agree there was a contract for the sale of the Property. "The contractual obligation was that the conditions stated in the Disclosure accurately reflect the known condition of the property as of the date of the [Agreement]."[51] While unlicensed work of the type Plaintiffs describe may well qualify as a material defect, the Court need not reach this question in the present case. Plaintiffs must show that Defendants knew of the defect.[52] The Court finds that Plaintiffs failed to prove, by a preponderance of the evidence, that Defendants knew the basement was finished by an unlicensed contractor and that he failed to acquire the necessary permits. Defendants, in good faith, relied upon their "licensed" (albeit not in NCC) contractor and, in good faith, represented the work was completed by a licensed contractor and permits

---

[43] *Dunn v. Vaudry*, 2011 WL 4638266, at *5 (Del. Super. Sept. 30, 2011).
[44] *Id.*
[45] *McCoy v. Cox*, 2007 WL 1677536, at *1 (Del. Super. June 11, 2007).
[46] *McCoy*, 2007 WL 1677536, at *6.
[47] *D'Aguiar v. Heisler*, 2011 WL 6951847, at *11 (Del. Com. Pl. Dec. 15, 2011).
[48] *Jiefu Ma v. Pineault*, 2012 WL 1416089, at *22-24 (Del. Com. Pl. Apr. 10, 2012).
[49] *McCoy*, 2007 WL 1677536, at *6.
[50] *Id*. at *1.
[51] *Iacono v. Barici*, 2006 WL 3844208, at *2 (Del. Super. Dec. 29, 2006).
[52] *McCoy*, 2007 WL 1677536, at *6.

were properly acquired. Plaintiffs argue that Defendants should have known of the defect. However, the Court finds that the burden placed upon the Defendants is only to act in good faith to disclose *actually known* defects.[53] The Court finds that Defendants met this burden. For this reason, Plaintiffs have not proved breach of contract.

**B. Fraud and Misrepresentation**

Common law fraud and intentional misrepresentation require the Plaintiffs prove the following five elements:

(1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance.[54]

It is clear that the Disclosure contained inaccurate statements of fact: Hedden was not licensed by NCC, nor did he obtain the required permits for finishing the basement. The basement had to be reconstructed and brought up to code. However, Plaintiffs failed to establish that Defendants knew the information regarding the code or permitting was false or that Defendants acted with reckless indifference to the truth.

The Court does find by a preponderance of the evidence, however, that Defendants intentionally, or with reckless disregard for the truth, misrepresented facts relating to the plumbing work done in the basement during their renovations. Disclosure #77 appears in the section of the form entitled, "PLUMBING-RELATED ITEMS" and reads, "Have there been

---

[53] 6 *Del. C.* § 2574.
[54] *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 958 (Del. 2005).

any additions/upgrades to the original service?"[55] Mrs. Walton answered "no" to this question. The Court finds that Mrs. Walton clearly knew that there had been plumbing changes. The Waltons had contracted for a new bathroom and kitchenette to be installed in the basement. When asked about Disclosure #77 at trial, Mrs. Walton said that she did not consider the new bathroom and kitchenette to count as "additions/upgrades to the original service" because they were additions rather than modifications.[56] The Court does not find this explanation convincing. It is the Court's judgment that an ordinary, reasonable person would understand Disclosure #77 to refer to any changes to the plumbing system, whether these changes were modifications to existing plumbing or extensions of existing plumbing for a new bathroom and kitchenette. However, without more, this finding does not support a decision in favor of Plaintiffs as to this claim.

Plaintiffs failed to establish that they acted in justifiable reliance on Defendants' representations. Mr. Dreisbach admitted that he "trusted the realtor, the inspectors, and Mr. Murray."[57] Mr. Dreisbach trusted Mr. Murray to act in Plaintiffs' best interest.[58] Plaintiffs had inspectors check the home for defects and retained a real estate attorney whom they trusted to notify them of any issues. The Court does not find, by a preponderance of the evidence, from the testimony, that Plaintiffs relied on Defendants' representations in deciding to purchase the property. Rather, reliance was placed on the people whom Plaintiffs hired and trusted to look out for their interests. Further, the Plaintiffs must have understood that the representations in the Disclosure were not the only, or even the best, information to determine whether they should consummate the transaction. They previously had checked with licensing and permitting

---

[55] JTE 9 at 54.
[56] TT at 111:11-15.
[57] TT at 81: 13-17.
[58] TT at 81: 1-6.

authorities regarding another property.[59]  Plaintiffs could easily have done the same with the subject Property.  For these reasons, the Court finds Plaintiffs have failed to prove fraud and intentional misrepresentation.

### C. Negligent Misrepresentation

Plaintiffs have the burden of proving the following four elements for a claim of negligent misrepresentation:

"(1) a pecuniary duty to provide accurate information, (2) the supplying of false information, (3) failure to exercise reasonable care in obtaining or communicating information, and (4) a pecuniary loss caused by justifiable reliance upon the false information.[60]

Defendants did, indeed, provide information that was not accurate.  However, as stated above, the Court finds that Plaintiffs failed to prove, factually, that they relied on the inaccurate information in deciding whether to undertake the purchase.  Instead, Plaintiffs relied on their realtor, home inspector, and real estate attorney.[61]  Finally, even if Plaintiffs could show reliance, the evidence suggests that such reliance would not be justifiable.  Plaintiffs knew there were questions left blank in the Disclosure document.  Under those circumstances, it would have been unreasonable for Plaintiffs to rely on the document as complete.  Plaintiffs also understood that the information in the Disclosure was not a warranty, but the owners' good faith representation of what they knew about the Property.  Further, the Plaintiffs failed to inquire into any potential permit or code issues with the Property, although Plaintiffs testified that they had made such inquires for a previous property that they had considered purchasing.[62]  Instead, Plaintiffs chose

---

[59] TT at 79: 9-17.
[60] *Iacono*, 2006 WL 3844208, at *5.
[61] TT at 79: 9-17.
[62] TT at 79:9-17

to place their trust in their realtor, home inspector, and real estate attorney, and eschew further investigation because they "really wanted the property."[63]

### D. Breach of the Implied Covenant of Good Faith and Fair Dealing

The implied covenant of good faith and fair dealing attaches to all contracts.[64] However, the covenant may not circumvent the explicit terms bargained for by the parties, nor may it be used to "create a free-floating duty unattached to the underlying legal document."[65] "[T]he implied covenant requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain."[66] Implementation of the covenant should be rare and follow only after a fact-intensive process.[67] The Court will "not rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal. Parties have a right to enter into good and bad contracts, the law enforces both."[68] "The implied covenant only applies to developments that could not be anticipated, not developments that the parties simply failed to consider."[69] Plaintiffs cannot use the covenant to secure contractual protections that they failed to bargain for at the time of the agreement.[70] However, a party may invoke the covenant when it is clear from the writing that both parties "would have agreed to proscribe the act later complained of had they thought to negotiate with respect to that matter."[71]

The Court finds that Defendants breached the implied covenant of good faith and fair dealing with respect to Disclosure #77. Mrs. Walton's misrepresentation made it much less

---

[63] TT at 79:9-17, 81:17-18.
[64] *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005).
[65] *Id.* at 441 (quotations omitted).
[66] *Id.* at 442 (quotations omitted).
[67] *Id.*
[68] *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010).
[69] *Id.*
[70] *Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808, 816 (Del. 2013), as corrected (Oct. 8, 2013).
[71] *Dunlap*, 878 A.2d at 442 (quoting *Katz v. Oak Industries, Inc.*, 508 A.2d 873, 880 (Del. Ch. 1986)).

likely that Plaintiffs would discover the material defects in the plumbing system. Without notice that plumbing work had been done, Plaintiffs had no reason to inquire into the adequacy of the plumbing work. If Mrs. Walton had acted in good faith, Plaintiffs would have had such notice. Plaintiffs have presented evidence that they paid $1,375 to have the plumbing brought up to code with the proper permits.[72] For this reason, the Court finds Defendants liable to Plaintiffs in the amount of $1,375.

## IV. CONCLUSION

It is the judgment of the Court, for the reasons stated above, that the verdict is in favor of the Plaintiffs in the amount of $1,375.

**IT IS SO ORDERED.**

_____
**M. Jane Brady**
Superior Court Judge

---

[72] JTE 18 at 335.