# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| LUCAS LOEFFLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. N24C-09-151 CLS |
| MNTN, INC., f/k/a MNTN DIGTITAL INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: January 31, 2025
Decided: April 28, 2025

## MEMORANDUM OPINION

*Upon Consideration of Defendant's Motion to Dismiss,*
**GRANTED in part, STAYED in part.**

Scott B. Czerwonka, Esquire of WILKS LAW, LLC, *Attorney for Plaintiff*.

Ryan D. Stottmann, Esquire and Cassandra Baddorf, Esquire of MORRIS NICHOLS ARSHT AND TUNNELL LLP, *Attorneys for Defendant*.

**SCOTT, J.**

# I.     INTRODUCTION

This action concerns the interpretation of a promissory note resulting from the acquisition of a former executive's company. The dispute centers on whether the acquiring company breached that promissory note by offsetting its full amount, including the "non-recourse" portion, against payments owed to the executive.

Before the Court is the company's motion to dismiss under Superior Court Civil Rule 12(b)(6). For the reasons below, the motion is **GRANTED in part, STAYED in part.**

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A. THE PARTIES

Plaintiff Lucas Loeffler, a Florida resident,[2] is the former Chief Executive Officer of the company QuickFrame Inc. ("QuickFrame"), which provides video content production and associated creative services.[3]

---

[1] Unless otherwise noted, the facts contained herein are drawn from the Amended Complaint and the documents it incorporates by reference and are assumed to be true for purposes of this Motion to Dismiss.

[2] Amended Complaint ¶ 5, D.I. 6 ("Am. Compl.").

[3] *Id.* ¶ 8.

Defendant MNTN, Inc. ("MNTN"),[4] a Delaware Corporation,[5] builds advertising software for brands to drive measurable conversions through television advertising.[6]

## B. FACTUAL BACKGROUND

In December 2021, MNTN acquired QuickFrame through a Merger Agreement.[7] Under the Merger Agreement, MNTN agreed to make two separate payments to QuickFrame stockholders, contingent on other conditions.[8] MNTN also agreed to provide $1 million each to three of QuickFrame's founders, including Loeffler.[9] In connection with this $1 million payment, Loeffler executed a promissory note (the "Note") and received the funds from MNTN in January 2022.[10]

---

[4] MNTN, Inc. is formerly known as MNTN Digital, Inc.

[5] Am. Compl. ¶ 6.

[6] Opening Brief in Support of Defendant's Motion to Dismiss the Amended Complaint at 1–2, D.I. 10 ("Opening Br.").

[7] Am. Compl. ¶ 9; Opening Br. at 2.

[8] Am. Compl. ¶ 10. Plaintiff alleges Defendant agreed to retain certain key employees post-closing, including Plaintiff continuing in a role with the merged entity for a period of time following the acquisition. *Id.* ¶ 11.

[9] *Id.* ¶ 12.

[10] *Id.* ¶ 13. Plaintiff contends the existence of the Note is for tax purposes, and Defendant never intended to seek any personal recovery. *Id.* Indeed, reporting of taxes is subject to the decision of each individual and their tax advisors.

## C. THE PROMISSORY NOTE

The Note reflects that Loeffler promised "to pay to [MNTN] the principal amount of $ 1,000,000 with interest from the date hereof on the unpaid principal balance under this Partial Recourse Promissory Note at the rate of 1.26% compounded annually. . . ."[11] The Note is structured as a "Partial Recourse Promissory Note" with both recourse and non-recourse portions in bold text:

> "The Borrower shall have no personal liability for the Non-Recourse Portion of the Note, and the Non-Recourse Portion of the Note shall be enforceable against the Borrower only to the extent of the Borrower's interest in the Pledged Collateral. The 'Recourse Portion' of this Note shall mean an amount equal to 51% of the initial principal amount of this Note, plus interest accrued on 100% of the principal amount, less any payments of accrued and unpaid interest on this Note, and any payment and prepayment of outstanding principal of the Recourse Portion of this Note. The 'Non-Recourse Portion' of this Note shall mean an amount equal to 49% of the initial principal amount of this Note, less any payments and prepayments of outstanding principal of the Non-Recourse Portion of this Note."[12]

The "Pledged Collateral" is defined "as security for the obligations of Borrower under this Note, including without limitation the timely payment of the principal and interest under this Note. . . ."[13] It is a security interest in the common shares of MNTN stock acquired upon exercise of stock options granted to Loeffler.[14]

---

[11] Complaint, Ex. A at 1, D.I. 1 ("the Note").

[12] *Id.* at 2–3.

[13] *Id.* at 2.

[14] *Id.*

The Note also contains an offset provision: "[MNTN] may, at its sole discretion and in its sole discretion, at any time or from time to time offset amounts owed to [Loeffler] by [MNTN] against the obligations of [Loeffler] hereunder."[15]

## D. THE DISPUTE AND SUBSEQUENT LEGAL ACTIONS

On or around May 15, 2023, MNTN informed Loeffler that it was withholding $1 million allocated to him under the first earnout payment otherwise due to account for the entirety of the Note he held.[16] Three days later, MNTN terminated Loeffler's employment "for cause, effective immediately."[17]

On February 21, 2024, the former equity holders of QuickFrame filed a complaint in the Court of Chancery ("the Chancery Action") against MNTN.[18] Count I claims breach of contract (by failing to timely issue the second earnout

---

[15] *Id.* at 3.

[16] Am. Compl. ¶ 17. According to Plaintiff, he neither consented nor agreed to this withholding but was merely informed "as a courtesy" that Defendant would be withholding payment. Plaintiff's Answering Brief in Opposition to Defendant's Motion to Dismiss the Amended Complaint at 3, D.I. 11 ("Answering Br."). Defendant, however, contends that Plaintiff did not object and provided "signoff" to the offset. Opening Br. at 3.

[17] Plaintiff alleges that this termination resulted in the cancellation of his stock options in MNTN. Plaintiff further asserts that these actions were part of a coordinated scheme to deprive him of both the promised payment and his interest in the Pledged Collateral that secured the non-recourse portion of the Note. Answering Br. at 4.

[18] *QF SH Rep LLC v. MNTN, Inc.*, C.A. No. 2024-0159 MAA. *See generally* Verified Complaint, D.I. 1.

payment under the Merger Agreement) and Count II seeks indemnification.[19] Count II was dismissed, but the breach-of-contract claim remains.[20]

On September 16, 2024, Loeffler initiated this action against MNTN seeking only declaratory judgment.[21] In October, MNTN moved to dismiss.[22] In response, Loeffler filed an Amended Complaint in November,[23] this time with three grounds for relief: (1) breach of the promissory note; (2) declaratory judgment; and (3) breach of the implied covenant of good faith and fair dealing (alternatively).[24] Through these claims, Loeffler seeks damages of $490,000, representing the 49% non-recourse portion of the Note, plus interest.[25]

In December, MNTN filed another Motion to Dismiss the Amended Complaint under Rule 12(b)(6).[26] The matter has been fully briefed,[27] and it is now ripe for decision.

---

[19] *See id.*

[20] *See QF SH Rep LLC v. MNTN, Inc.*, C.A. No. 2024-0159 MAA, D.I. 22.

[21] *See generally* Complaint for Declaratory Judgment ¶¶ 17–20, D.I. 1.

[22] *See generally* Defendant's Motion to Dismiss, D.I. 4.

[23] *See generally* Am. Compl.

[24] *Id.* ¶¶ 19–34.

[25] *Id.* ¶ 34.

[26] *See generally* Defendant's Motion to Dismiss Plaintiff's Amended Complaint, D.I. 9.

[27] *See generally* Opening Br.; Answering Br.; Reply Brief in Support of Defendant's Motion to Dismiss the Amended Complaint, D.I. 14 ("Reply Br.").

# III. PARTIES' CONTENTIONS

## A. MNTN'S CONTENTION

MNTN moves to dismiss the Amended Complaint in its entirety arguing the Note unambiguously permitted MNTN to offset the entire amount, including both recourse and non-recourse portions. Central to MNTN's position is its contention that Loeffler's promise to repay the entire amount of the Note permitted MNTN, through the offset provision, to apply against sums owed to Loeffler.[28] MNTN asserts that the non-recourse language would only become relevant upon default, which never occurred because the offset constituted performance rather than enforcement of the Note.[29]

MNTN also argues the declaratory judgment claim should be dismissed as duplicative of the breach of contract claim and serves as a remedy rather than a substantive cause of action.[30] Also, the implied covenant claim is argued to be invalid because there is no contractual gap to fill and MNTN merely exercised its explicit contractual rights.[31]

---

[28] Opening Br. at 5–6.

[29] *Id.* at 6; Reply Br. at 1.

[30] Opening Br. at 7–8; Reply Br. at 2.

[31] Opening Br. at 8–10; Reply Br. at 2–4.

## B. Loeffler's Contention

Loeffler contends MNTN's interpretation ignores fundamental principles of contractual construction under Delaware law. He emphasizes the Note's explicit bolded language which states he "shall have no personal liability for the Non-Recourse Portion" and that this portion "shall be enforceable against [him] only to the extent of [his] interest in the Pledged Collateral."[32] Loeffler argues that "no personal liability" equates to "no legal obligation," meaning the offset provision allowing MNTN to offset against his "obligations" cannot encompass the non-recourse portion.[33] Further, he alleges that MNTN's actions in offsetting the entire Note amount and then terminating him for cause thereafter constituted a coordinated scheme to deprive him of both the payment and the Pledged Collateral, violating both the express terms of the Note and the implied covenant of good faith and fair dealing.[34]

## IV. STANDARD OF REVIEW

Upon a motion to dismiss under Rule 12(b)(6), the Court (i) accepts all well-pled factual allegations as true, (ii) accepts even vague allegations as well-pled if they give the opposing party notice of the claim, (iii) draws all reasonable inferences

---

[32] Answering Br. at 6.

[33] *Id.* at 6–7.

[34] *Id.* at 9–10.

in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[35]  The Court does not, however, accept "conclusory allegations that lack specific supporting factual allegations."[36]  But "it is appropriate . . . to give the pleader the benefit of all reasonable inferences that can be drawn from its pleading."[37]

## V.    DISCUSSION

MNTN asks the Court to dismiss the entire Amended Complaint under Rule 12(b)(6) for failure to state a claim.[38]  Count I asserts that MNTN breached the promissory note.[39]  Count II seeks a declaratory judgment.[40]  Alternatively, Count III contends MNTN breached the implied covenant of good faith and fair dealing.[41]  The Court addresses each in turn.

---

[35] *See ET Aggregator, LLC v. PFJE AssetCo Hldgs. LLC*, 2023 WL 8535181, at *6 (Del. Super. Dec. 8, 2023).

[36] *Id.* (quoting *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998)).

[37] *TrueBlue, Inc. v. Leeds Equity Partners IV, LP*, 2015 WL 5968726, at *2 (Del. Super. Sept. 25, 2015) (quotation omitted).

[38] *See* Opening Br. at 1–2.  In its Reply Brief, MNTN also asks the Court to stay the Motion pending the Chancery Action, if the case is not dismissed.  Reply Br. at 4–5.

[39] Am. Compl. ¶¶ 19–23.

[40] *Id.* ¶¶ 24–27.

[41] *Id.* ¶¶ 28–34.

## A. THE BREACH OF PROMISSORY NOTE CLAIM IS STAYED

To state a claim for breach of contract,[42] a plaintiff must plead: "(1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) a resulting damage to the plaintiff."[43] Here, the first and third elements are undisputed. The parties also concedes that the Note contains an offset provision allowing MNTN to "offset amounts owed to Borrower by Lender against the obligations of Borrower hereunder."[44] But the core disagreement between the parties is whether MNTN could offset the portion designated as "non-recourse."

It is within the exclusive discretion of the Court to grant a stay.[45] "When deciding a [stay], [the] Court recognizes the inherently discretionary nature of a decision on a stay motion and the importance of striking a sensible balance of the relevant competing interests."[46] Concurrent litigation would cause duplicative

---

[42] "A promissory note is a variety of contract." *Bank of Delmarva v. S. Shore Ventures, LLC*, 2014 WL 5390389, at *3 (Del. Super. Oct. 21, 2014) (citing *Beal Bank, SSB v. Lucks,* 791 A.2d 752, n.13 (Del. Ch. 2000)).

[43] *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003) (citing *Moore Bus. Forms, Inc. v. Cordant Holdings Corp.,* 1995 WL 662685, at *7 (Del. Ch. Nov.2, 1995)).

[44] The Note at 3.

[45] *See In re Insys Therapeutics Inc. Deriv. Litig.*, 2017 WL 5953515, at *2 (Del. Ch. Nov. 30, 201) (cleaned up).

[46] *Id.*

discovery, waste judicial economy, and risk inconsistent resolutions on similar issues.[47]

Count I should be stayed. The Pledged Collateral which secures the non-recourse portion of the Note, directly relates to Loeffler's employment status and stock options—central issues in the Chancery action. Therefore, any determination regarding MNTN's offset rights would involve findings about the Pledged Collateral that might conflict with the Court of Chancery's rulings.

Thus, it is more appropriate to address the breach-of-contract claim after the Chancery Action is fully resolved. Accordingly, Count I is **STAYED** pending the outcome of the Chancery action.

### B. THE CLAIM FOR DECLARATORY JUDGMENT FAILS

Loeffler's claim of declaratory judgment fails because it is duplicative. A declaratory judgment "is a statutory action . . . meant to provide relief in situations where a claim is ripe but would not support an action under common-law . . . ."[48]

---

[47] *Nokia Sols. & Networks Oy v. Collision Comm'cns, Inc.*, 2020 WL 2095829, at *6 (Del. Super. Apr. 30, 2020) ("[A]lowing two substantially overlapping actions to proceed simultaneously would require two courts to adjudicate the same contractual dispute, risking a significant waste of judicial resources and inconsistent resolution of the issues."); *In re Bay Hills Emerging Partners I, L.P.*, 2018 WL 3217650, at *8 (Del. Ch. July 2, 2018) ("The simultaneous procession of both actions risks the significant waste of scarce judicial resources and, more importantly, the inconsistent resolution of relevant issues."); *see also Salzman v. Canaan Capital P'rs, L.P.*, 1996 WL 422341, at *6 (Del. Ch. July 23, 1996); *In re Chambers Dec. Co., Inc. S'holders Litig.*, 1993 WL 179335, at *6 (Del. Ch. May 20, 1993).

[48] *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980, at *29 (Del. Ch. Nov. 16, 2014).

11

"[T]here is no need for a declaratory judgment . . . where a claimant merely has repackaged in the language of a declaration an adequately[]pleaded affirmative count[.]"[49] Delaware courts reject a declaratory judgment claim if it is "wholly and completely' duplicative[.]"[50] To survive dismissal, "a declaratory count must be 'distinct' from the affirmative counts in the complaint such that a decision on the affirmative counts would not resolve the declaratory count."[51]

Loeffler's argument that MNTN's offset breached the Note mirrors his breach-of-contract claim.[52] His declaratory judgment claim seeks a ruling on the same legal issue addressed in Count I—whether MNTN was entitled to offset against the non-recourse portion of the Note.[53] The Court's resolution for Count I would also resolve the declaratory judgment claim. Because the declaratory judgment claim adds nothing new, it is duplicative, and dismissal is warranted.[54]

---

[49] *Blue Cube Spinco LLC v. Dow Chem. Co.*, 2021 WL 4453460, at *15 (Del. Super. Sept. 29, 2021) (internal quotes omitted).

[50] *DuPont De Nemours, Inc. v. Hemlock Semiconductor Operations LLC*, 2024 WL 3161799 (Del. Super. June 10, 2024) (quoting *IP Network Solutions, Inc. v. Nutanix, Inc.*, 2022 WL 369951, at *7 (Del. Super. Feb. 8, 2022)).

[51] *Blue Cube Spinco LLC*, 2021 WL 4453460, at *15 (citing *Sweetwater Point, LLC v. Kee*, 2020 WL 6561567, at *17 (Del. Super. Nov. 5, 2020); *Trusa v. Nepo*, 2017 WL 1379594, at *8 n.71 (Del. Ch. Apr. 13, 2017); *Veloric v. J.G. Wentworth, Inc.*, 2014 WL 4639217, at *20 (Del. Ch. Sept. 18, 2014); *Goldenberg v. Immunomedics, Inc.*, 2021 WL 1529806, at *20 (Del. Ch. Apr. 19, 2021)).

[52] *Compare* Am. Compl. ¶¶ 19–23 *with id.* ¶¶ 24–27.

[53] *Id.* ¶¶ 24–27.

[54] *Blue Cube Spinco LLC*, 2021 WL 4453460, at *15.

To the extent Loeffler seeks a declaration regarding future payments,[55] such a claim is speculative and not ripe for decision.  The Amended Complaint does not identify any specific future payment obligations that might be subject to offset, nor does it allege that MNTN has threatened to offset against such payments.

Accordingly, dismissal as to Count II is **GRANTED**.

### C. PLAINTIFF FAILS TO IDENTIFY A CONTRACTUAL GAP SUCH THAT THE COVENANT OF GOOD FAITH AND FAIR DEALING APPLIES

MNTN also asks the Court to dismiss Loeffler's breach of the implied covenant of good faith and fair dealing for failure to state a claim.[56]  The implied covenant of good faith and fair dealing is inherent in all contracts[57] and "'best understood as a way of implying terms in the agreement,' whether employed to analyze unanticipated developments or to fill gaps in the contract's provisions."[58] The implied covenant "does not establish a free-floating requirement that a party act

---

[55] *See* Answering Br. at 9.  Plaintiff contends Count II is not entirely duplicative of Count I because of potential "offsets for future installment payments" under the Merger Agreement.

[56] Opening Br. at 8–10.

[57] *Merrill v. Crothall–American Inc.,* 606 A.2d 96, 101 (Del. 1992); *Blish v. Thompson Automatic Arms Corp.,* 64 A.2d 581, 597 (Del. 1948).

[58] *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005) (citing *E.I. DuPont de Nemours & Co. v. Pressman,* 679 A.2d 436, 443 (Del. 1996); *Glenfed Fin. Corp., Commercial Fin. Div. v. Penick Corp.,* 647 A.2d 852, 858 (1994)).

in some morally commendable sense,"[59] nor does it "require that a party have acted in subjective good faith."[60]

The implied covenant only applies when the underlying contract is "truly silent" on the issue.[61] "The covenant does not allow for judicial rewriting of contracts, '[p]arties have a right to enter into good and bad contracts, the law enforces both.'"[62] Thus, "it does not apply when the contract addresses the conduct at issue."[63] The party claiming the covenant has been breached bears the burden to identify the contractual gap.[64]

Loeffler asserts MNTN breached the implied covenant by exercising its offset right in conjunction with terminating him for cause, thereby depriving him of both the payment and the Pledged Collateral.[65] The Court disagrees.

---

[59] *Allen v. El Paso Pipeline GP Co., L.L.C.*, 113 A.3d 167, 182–83 (Del. Ch. 2014) (citing *Gerber v. Enter. Prods. Hldgs., LLC,* 67 A.3d 400, 418 (Del. 2013)).

[60] *Id.* at 183 (citing *ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC,* 50 A.3d 434, 442, 444 (Del. Ch. 2012)).

[61] *Oxbow Carbon & Mins. Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 507 (Del. 2019).

[62] *I Am Athlete, LLC v. IM EnMotive, LLC*, 2024 WL 4904685, at *8 (Del. Super. Nov. 27, 2024) (citing *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010)).

[63] *Id.* (citing *Nationalwide Emerging Managers, LLC v. Northpointe Holdings*, LLC, 112 A.3d 878, 896 (Del. 2015)).

[64] *Id.* (citing Miller *v. HCP & Co.*, 2018 WL 656378, at *2 (Del. Ch. 2018), *aff'd sub nom. Miller v. HPC Trumpet Invs., LLC*, 194 A.3d 908 (Del. 2018)).

[65] Am. Compl. ¶¶ 32–33; Answering Br. at 9–10. Plaintiff further alleges this coordinated action was not being undertaken in good faith and frustrates the purpose of the Note.

Loeffler has failed to identify any gap in the Note that would require application of the implied covenant. The Note explicitly addresses the nature of the agreement, the enforcement mechanisms available to MNTN, and MNTN's offset rights. These provisions leave no room for the Court to imply additional terms governing the same subject matter. In short, the Note isn't truly silent on the breach issue. The Note's terms, not the implied covenant, determine whether MNTN breached the agreement.

Loeffler's allegations regarding his termination for cause and subsequent loss of equity conflate two separate contractual relationships—the Note and the Merger Agreement governing Loeffler's equity interests. The termination for cause and resulting loss of equity occurred under the Mergers Agreement, not the Note.[66] The implied covenant cannot be used to import terms from one contract into another or to create obligations that contradict express contractual provisions.

Thus, Count III warrants dismissal.[67]

---

[66] Am. Compl. ¶ 11.

[67] Defendant also contends that Court III should be dismissed on the basis of being duplicative. Opening Br. at 9. Conversely here, Count III is being pled in the alternative only such that it is not necessarily duplicative of Count I. Therefore, that Count I and III rely on the same allegedly wrongful underlying conduct does not compel dismissal of the Implied Covenant claim.

## VI.    CONCLUSION

For the reasons above, Defendant MNTN's Motion to Dismiss is **GRANTED in part, STAYED in part.**

**IT IS SO ORDERED.**

*/s/ Calvin Scott*
Judge Calvin L. Scott, Jr.