******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

McDONALD, J., concurring. I agree with and join the majority's well reasoned opinion. Specifically, I agree that the jury was improperly instructed that the second sentence of § 3.4 of the operating agreement of CCP Equity Partners, LLC, a Delaware limited liability company (LLC), imposes a duty on managers not to act in bad faith or with gross negligence or wilful misconduct because, under settled Delaware law, this sort of exculpatory provision does not impose affirmative duties on the parties.[1] I further agree that a retrial is warranted because the first sentence of § 3.4 *does* impose affirmative duties on the managers (to "exercise their best judgment" in conducting CCP's operations and performing their contractual obligations), and the "best judgment" requirement, although ambiguous, reasonably could be construed—either independently or in context—to prohibit the sort of oppression of minority interests that the plaintiff, John B. Clinton, alleged and that the jury apparently found.[2] I write separately to emphasize two points.

I

First, because the operating agreement is not governed by Connecticut law, the majority's resolution of

[1] See, e.g., *Feeley* v. *NHAOCG, LLC*, 62 A.3d 649, 664–65 (Del. Ch. 2012) (similar limiting language in exculpatory clause is addressed to fiduciary duties, which are assumed to exist independently of written contract).

[2] I agree with the plaintiff that a plain language reading of the term "best judgment," as those words typically are defined, is consistent with the conclusion that members of an LLC fail to exercise their best judgment when they establish an unnecessarily and unreasonably large capital reserve, expel a minority shareholder, and then almost immediately begin to dissipate the capital reserve by distributing to themselves that shareholder's accrued earnings, resulting in an anticipated and costly legal battle. I also agree with the plaintiff that, although "best judgment" does not appear to be a settled term of art under Delaware law, some courts have used that term in a manner that implies that, by acting in bad faith, one necessarily fails to exercise his or her best judgment. See, e.g., *University of Delaware* v. *Warrington*, Docket Civ. A. No. 12440, 1993 WL 410417, *3 (Del. Ch. October 6, 1993); *Dunning* v. *Barnes*, Docket No. Civ. A. 98C-02-045, 2002 WL 31814525, *1 n.1 (Del. Super. November 4, 2002); see also, e.g., *Hernandez*

the contract issues does not establish any precedent under the laws of Connecticut regarding the interpretation or application of LLC operating agreements, and nothing in the majority opinion should be interpreted to do so. There is no disagreement, at this point, that the relationship between the parties, both contractual and fiduciary, is governed by the law of Delaware. That state's corporate governance law features "distinctive substantive and structural attributes . . . ." J. Fisch, "Leave It to Delaware: Why Congress Should Stay Out of Corporate Governance," 37 Del. J. Corp. L. 731, 740 (2013). For example, it is the stated policy of the Delaware legislature "to give the maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements." Del. Code Ann. tit. 6, § 18-1101 (b) (2005). One corollary of this is that the Delaware courts often dismiss at the pleading stage claims alleging breach of fiduciary duty when those claims overlap completely with claims alleging breach of a corporate governance agreement. That may well be why the trial court in this case did not permit the jury to find, in the alternative, that the defendants, Michael E. Aspinwall, Steven F. Piaker, and David W. Young, breached their duty of loyalty to the plaintiff.[3]

v. *Employers Mutual Liability Ins. Co. of Wisconsin,* 346 F.2d 154, 155 (5th Cir. 1965).

[3] To be clear, I do not understand Delaware law to have required the jury verdict form to be structured as it was under the facts of this case.

Substantively, the trial court presumably was relying on a line of Delaware cases holding that a breach of contract claim cannot be bootstrapped onto a breach of fiduciary duty claim when the two claims are substantially identical and the obligation is expressly addressed by the contract. See, e.g., *Nemec* v. *Shrader,* 991 A.2d 1120, 1129 (Del. 2010) ("It is a [well settled] principle that where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim. In that specific context, any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous."). The Delaware Supreme Court has made clear, however, that this bootstrapping rule does not preclude a plaintiff from bringing a breach of fiduciary duty claim that overlaps with a contract claim but relies on additional factual allegations, implicates distinct legal principles, or affords dif-

Accordingly, our conclusions in this case should not be taken to mean that the result necessarily would have been the same had the matter been litigated under Connecticut law.

## II

Second, I would accept the plaintiff's request in his preliminary statement of the issues that we address his challenge to the trial court's ruling striking his claim alleging that the defendants had breached the implied covenant of good faith and fair dealing (implied covenant). The following procedural history is relevant.

In his first amended complaint, the plaintiff alleged that each of the defendants had violated the implied

ferent remedies. As that court recently explained in *Bäcker* v. *Palisades Growth Capital II, L.P.*, 246 A.3d 81 (Del. 2021), "[t]his bootstrapping case law only requires dismissal where a fiduciary duty claim wholly overlaps with a concurrent breach of contract claim." Id., 109. It does not apply, the court explained, when the two claims share a common nucleus of operative facts, but the fiduciary duty claim depends on additional facts and considerations, or provides for different remedies. See id. That is true of the present case, in which the plaintiff's breach of fiduciary duty claim involved, at the very least, distinct factual allegations and legal theories (e.g., that the defendants failed to deal with the plaintiff in good faith with respect to extracontractual representations, and that they sought to advantage themselves at his expense).

Procedurally, in Delaware, cases of this sort are not typically tried to a jury, so the verdict form issue simply does not arise. As a matter of Connecticut procedural law, I see no reason why the jury could not have been permitted to find, in the alternative, that the plaintiff had established every element of a breach of fiduciary duty claim. See *Clinton* v. *Aspinwall*, 344 Conn. 696, 711, 281 A.3d 1174 (2022) ("under Delaware law, breach of fiduciary duty is a legally consistent alternative theory of recovery to breach of contract"). Of course, the plaintiff could not recover the same damages under distinct legal theories.

As it was, though, because no judgment was rendered on the breach of fiduciary duty claim, the plaintiff was required to withdraw that claim in order to permit the present appeal to proceed. See id., 711 n.7. I see no reason why, on remand, he cannot seek the trial court's leave to amend his complaint and to reinstate that claim, on which the jury should be permitted to reach a verdict, regardless of how it resolves the contract claim.

covenant under Delaware's statutory[4] and common law. Specifically, he alleged that § 10.3 (b) of the operating agreement,[5] which deals with the repurchase of member interests, includes an implied contractual obligation not to maintain an unreasonably large company capital reserve at the time of a member's repurchase event. The plaintiff further alleged that the $3 million reserve that the defendants maintained when they removed him from the company was unreasonably large.

The defendants moved to strike the implied covenant claim, contending that the claim was not cognizable under Delaware law because, among other things, the purported obligation not to maintain an unreasonably large capital reserve was inconsistent with what they understood to be the "virtually unfettered discretion" afforded to them under the operating agreement.[6] (Internal quotation marks omitted.) The trial court, *Peck, J.,* granted the motion to strike the implied covenant claim, concluding that the plaintiff's allegations were legally insufficient under Delaware law. Specifically, the court concluded that the alleged reasonableness requirement was not "clearly implied" by the express terms of the operating agreement because § 10.3 (b) "makes a mere reference to the capital reserve" and does not address its reasonableness.

The plaintiff took the initial steps necessary to challenge this ruling on appeal. When the defendants brought

---

[4] See Del. Code Ann. tit. 6, § 18-1101 (c) (2005) (LLC agreement may not eliminate implied covenant).

[5] Section 10.3 (b) of the operating agreement provides in relevant part: "Upon any repurchase . . . [the] Repurchase Member . . . shall receive . . . an amount equal to the aggregate amount in the Capital Account of such Repurchase Member . . . less such Repurchase Member's pro rata share . . . of the then-current capital reserve for future expenses established by the Board of Managers."

[6] Section 3.2 (a) (xiii) of the operating agreement provides that managers shall have the power to "establish from time to time a capital reserve for future expenses of the Company."

their appeals in 2018, the plaintiff filed his own prelimi-
nary statement of issues. Pursuant to Practice Book
(2019) § 63-4 (a) (1) (B),[7] he requested that, in the event
that the defendants were awarded a new trial, the fol-
lowing adverse rulings of the Superior Court (among
others) be considered on appeal:

"1. Whether the Superior Court erred in striking [the
plaintiff's] claim for breach of the implied covenant
. . . .

"2. Whether the Superior Court erred in striking [the
plaintiff's Connecticut Unfair Trade Practices Act (CUTPA)]
claim."

Following the dismissal of the defendants' original
appeals; see *Clinton* v. *Aspinwall*, 344 Conn. 696, 699,
713, 281 A.3d 1174 (2022); and the plaintiff's withdrawal
of his fiduciary duty claim, which allowed this appeal
to proceed, the plaintiff again presented for this court's
review, under Practice Book (2024) § 63-4 (a) (1) (B),
the issue of whether the trial court properly struck
his implied covenant and CUTPA claims. Although the
plaintiff briefed both issues before the trial court, he
has not addressed them in his briefs submitted to the
Appellate Court or this court.

There is no question that, before we could consider
the plaintiff's implied covenant claim, we would need
to afford the parties a new opportunity to brief the
issue. See, e.g., *Blumberg Associates Worldwide, Inc.*
v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123,

---

[7] Practice Book (2019) § 63-4 (a) (1) provides in relevant part: "If any
appellee wishes to . . . (B) present for review adverse rulings or decisions
of the [trial] court which should be considered on appeal in the event the
appellant is awarded a new trial . . . that appellee shall file a preliminary
statement of issues within twenty days from the filing of the appellant's
preliminary statement of the issues.

"Whenever the failure to identify an issue in a preliminary statement
of issues prejudices an opposing party, the court may refuse to consider
such issue."

161–62, 84 A.3d 840 (2014). I would have requested supplemental briefing because I think the plaintiff plausibly argues that his implied covenant claim was colorable under Delaware law and should not have been stricken, and because judicial economy favors resolving the issue at this time rather than after a second trial.[8]

Courts and commentators have observed that Delaware's courts have provided uncharacteristically opaque guidance with respect to the implied covenant.[9] The boilerplate language typically emphasizes the cautiousness with which Delaware courts approach such claims, given their disinclination to imply contract terms to which the parties did not formally agree or to "rebalanc[e] economic interests after events that could have been anticipated, but were not, that later adversely affected one party to a contract." (Internal quotation marks omitted.) *Gerber* v. *Enterprise Products Holdings, LLC*, 67 A.3d 400, 421 (Del. 2013), overruled on other grounds by *Winshall* v. *Viacom International, Inc.*, 76 A.3d 808 (Del. 2013). Despite the cautions, however, plaintiffs

[8] Although I would have no objection to it, I see no need to solicit supplemental briefing on the plaintiff's CUTPA claim, which, for various reasons, I believe was correctly stricken.

[9] See, e.g., *E.I. DuPont de Nemours & Co.* v. *Pressman*, 679 A.2d 436, 443 (Del. 1996) ("[a]lthough the [implied] [c]ovenant is a generally acknowledged principle, its precise contours are not fixed"); D. Listwa, "Cooperative Covenants: Good Faith for the Alternative Entity," 24 Stan. J.L. Bus. & Fin. 137, 137 (2019) ("[l]acking a clear notion of what the implied covenant demands, the Delaware courts have been hobbled in their attempts to generate a standard commensurate with the much-praised set of precedents the jurisdiction has developed with regard to corporate fiduciary duties"); D. Listwa, supra, 141 ("the Delaware Supreme Court has struggled to develop a workable [implied covenant] doctrine"); M. Manesh, "Express Contract Terms and the Implied Contractual Covenant of Delaware Law," 38 Del. J. Corp. L. 1, 1 (2013) ("Delaware law conceives of the implied . . . covenant . . . in contradictory terms. It is both a [gap-filler] subject to the express terms of a contract and an overriding obligation notwithstanding the express terms of a contract. It is not a judicial license to equitably rewrite bargained for agreements, yet courts may invoke [it] to limit express contractual rights when fairness dictates.").

regularly prevail on implied covenant claims in Delaware. See, e.g., B. Horton, "Modifying Fiduciary Duties in Delaware: Observing Ten Years of Decisional Law," 40 Del. J. Corp. L. 921, 921 (2016) ("despite the [Delaware] Court of Chancery's recurring admonition that the implied covenant is not a replacement for fiduciary duties, the implied covenant remains a potent attack where the [LLC] agreement partially modifies fiduciary duties, leaving discretionary gaps").

The trial court concluded that the plaintiff's implied covenant claim must be stricken because the alleged contractual obligation was not "clearly implied" by the express terms of the operating agreement. The primary source that the trial court relied on in imposing that requirement was *Liberty Property Ltd. Partnership* v. *25 Massachusetts Avenue Property LLC*, Docket C.A. No. 3027-VCS, 2009 WL 224904 (Del. Ch. January 22, 2009), aff'd, 970 A.2d 258 (Del. 2009) (*Liberty Property*). But that unpublished case was decided under the law of the District of Columbia, not of Delaware. See id., *4–5.

In the "foundational" case on the matter; D. Listwa, "Cooperative Covenants: Good Faith for the Alternative Entity," 24 Stan. J.L. Bus. & Fin. 137, 141 (2019); the Delaware Supreme Court embraced what it referred to as a "commonsensical" approach to implied covenant claims. (Internal quotation marks omitted.) *Gerber* v. *Enterprise Products Holdings, LLC*, supra, 67 A.3d 418. Under *Gerber*, which was decided subsequent to all of the Delaware cases on which the trial court relied in its decision addressing the defendants' motion to strike, the implied covenant is used to enforce the parties' contractual bargain by implying those terms that the parties would have agreed to during their original negotiations. Id. "Under Delaware law, a court confronting an implied covenant claim asks whether it is clear from what was expressly agreed [on] that the parties who negotiated the express terms of the contract would

have agreed to proscribe the act later complained of as a breach of the implied covenant of good faith—had they thought to negotiate with respect to that matter. . . . [Fair dealing means] a commitment to deal fairly in the sense of consistently with the terms of the parties' agreement and its purpose. Likewise good faith does not envision loyalty to the contractual counterparty, but rather faithfulness to the scope, purpose, and terms of the parties' contract." (Emphasis omitted; internal quotation marks omitted.) Id., 418–19. Put differently, "[Delaware law suggests that] there are two strains of the implied covenant: (1) gap-filling and (2) protecting against arbitrary and bad faith exercise of discretion. Under the first strain, the implied covenant is implicated when an agreement is *truly silent* on a term and requires a party to identify a gap in the contract to state a claim. Under the second strain, the implied covenant is implicated when a party is given discretion to act as to a certain subject and it is argued that the discretion has been used in a way that is impliedly proscribed by the contract's express terms." (Emphasis added; footnotes omitted; internal quotation marks omitted.) *Osios LLC* v. *Tiptree, Inc.*, Docket C.A. No. 2023-0589-NAC, 2024 WL 2947854, \*5 (Del. Ch. June 12, 2024). The *Liberty Property* standard, as applied by the trial court, thus captures only a subset of those claims that are cognizable under the current Delaware rule, which recognizes that the implied covenant extends to questions on which the contractual language is silent.[10]

---

[10] A primary purpose of the implied covenant is to fill gaps in the express terms of the contract that the parties either (1) never thought to address or (2) considered so obvious as to not require discussion. See, e.g., *Cygnus Opportunity Fund, LLC* v. *Washington Prime Group, LLC*, 302 A.3d 430, 458–59 (Del. Ch. 2023). But, by definition, few, if any, such gaps will be *clearly* implied by the text of an LLC agreement, at least in the way that the trial court appears to have understood and applied that standard. See, e.g., id., 461 ("The defendants [argue] that the LLC [a]greement does not impose any express limitations on [their discretion], but the answer to that is, '[p]recisely.' The absence of any express limitation is what creates a gap in the [provision]. The LLC [a]greement provides the [board of managers]

I believe that the Delaware courts would have allowed the plaintiff's implied covenant claim to proceed under either strain of the implied covenant, insofar as he alleged both that the defendants had violated implied contractual provisions to which rational actors would have agreed and that the defendants had performed their discretionary management functions arbitrarily and in bad faith.[11] It makes sense that the parties would have agreed at the original bargaining stage to afford majority shareholders broad discretion to establish a suitable cash reserve and equally broad discretion to remove a minority shareholder with whom they could no longer constructively operate. That sort of self-interest is assumed and permitted under Delaware law. But no rational agent would agree in advance to an arrangement whereby, if he happened to fall into the minority at any point, the majority could transfer all of his accrued profits into an unnecessarily large capital reserve, remove him from the company, and then redistribute his share of the profits to themselves.[12] Interpreting the operating agreement in that manner would give rise to a sort of

with discretion over which path to take, and the implied covenant requires that the [b]oard exercise that discretion reasonably."). The standard that the trial court adopted would make it almost impossible for a plaintiff to prevail on an implied covenant claim. Of course, under *Gerber*, for the plaintiff to prevail, it still must be clear that the parties to the operating agreement, had they considered the issue during the contract drafting process, would have agreed to prohibit the challenged conduct.

[11] In his opposition to the motion to strike, the plaintiff repeatedly cited *Gerber* as providing the governing standard and explained, at some length, how his allegations were consistent with both strains of Delaware implied covenant law.

[12] See, e.g., *ArchKey Intermediate Holdings Inc.* v. *Mona*, 302 A.3d 975, 1005 (Del. Ch. 2023) ("[Although] they obviously are not fiduciaries and are free to act in their own interests, [the parties] have committed themselves to an effort to create joint surplus. For purposes of the implied covenant, that means that in the original bargaining position, the parties would have viewed a promise not to harm each other intentionally as so obvious that neither side would have raised it."). The extent to which the defendants engaged in that sort of improper conduct is, of course, a question of fact for the jury.

prisoner's dilemma scenario, in which each group of members would be incentivized to dispossess a transient minority, before they themselves were dispossessed. Delaware courts repeatedly have rejected the argument, raised by the defendants in this case, that a contractual grant of managerial discretion should be read so broadly as to allow that degree of self-dealing, which deprives the oppressed minority member of the benefit of the bargain; rather, such conduct is insulated from challenge only if it is plainly *permitted* by the language of the contract.[13]

We can certainly defer action on this issue, but I fail to see the wisdom in that approach. On remand, the plaintiff may seek to have his implied covenant claim reconsidered by a different trial court, and reinstated. In light of the authorities identified herein, perhaps that trial court will allow the claim to proceed. Either way, years from now, we face the potential of yet another appeal, another reversal, another retrial. The plaintiff alone has now spent more than $1.2 million in attorney's fees litigating a $1.1 million judgment. The underlying conduct took place in 2013. The case was tried in 2018. This court, in 2022, directed that the defendants' initial appeals be dismissed; see *Clinton* v. *Aspinwall*, supra, 344 Conn. 699, 713; and now, in 2025, we are sending it back so that the parties and the trial court can start all over again. Accordingly, rather than prolong and

---

[13] Cf., e.g., *Dieckman* v. *Regency GP LP*, 155 A.3d 358, 367–69 (Del. 2017); *Dunlap* v. *State Farm Fire & Casualty Co.*, 878 A.2d 434, 440 (Del. 2005); *Cygnus Opportunity Fund, LLC* v. *Washington Prime Group, LLC*, 302 A.3d 430, 458–61 (Del. Ch. 2023); *Bandera Master Fund LP* v. *Boardwalk Pipeline Partners, LP*, Docket C.A. No. 2018-0372-JTL, 2019 WL 4927053, *21–24 (Del. Ch. October 7, 2019); *Bay Center Apartments Owner, LLC* v. *Emery Bay PKI, LLC*, Docket C.A. No. 3658-VCS, 2009 WL 1124451, *7 (Del. Ch. April 20, 2009); *Amirsaleh* v. *Board of Trade of the City of New York, Inc.*, Docket Civil Action No. 2822-CC, 2008 WL 4182998, *1, *7–9 (Del. Ch. September 11, 2008); *Charlotte Broadcasting, LLC* v. *Davis Broadcasting of Atlanta, L.L.C.*, Docket C.A. No. 13C-04-143-WCC CCLD, 2015 WL 3863245, *6–8 (Del. Super. June 10, 2015), aff'd, 134 A.3d 759 (Del. 2016).

make more complicated a dispute that should have been resolved years ago, I would afford the parties an opportunity to brief the implied covenant claim and address it now. See, e.g., *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra, 311 Conn. 161–62.